**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**TAMMY B.,**

          **Plaintiff,**

      **v.**                        **Civil Action 2:21-cv-4514
Chief Judge Algenon L. Marbley
Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF
SOCIAL SECURITY,**

          **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Tammy B., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.     BACKGROUND**

Plaintiff protectively filed her application for DIB on June 3, 2019, alleging that she was disabled beginning April 1, 2012. (Tr. 206–09). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on September 2, 2020. (Tr. 37–78). On September 15, 2020, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 17–36). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

Next, Plaintiff filed this action. (Doc. 1). As required, the Commissioner filed the administrative record (Doc. 6), and the parties briefed the issues. (Docs. 7, 9). The matter is ripe for review.

A.    **Relevant Hearing Testimony**

The ALJ summarized Plaintiff's hearing testimony:

[Plaintiff] confirmed she had no medical treatment of any kind from the alleged onset date to February 2015 due to a lack of finances and medical insurance. She testified to being unable to work during the period at issue because her lower back symptoms had worsened particularly since her surgery in June 2017. She stated that she was not able to lift anything and could not sit or walk for long because of constant pain. She added that since the surgery she is unable to go outside and play with her grandchildren and can no longer run, jog or ride a bike. She testified that since the June 2017 surgery, she has been sleeping in a bed downstairs because she is unable to walk up stairs. She testified that prior to the surgery she had shooting pain from her lower back to her hip. She testified to getting no improvement from the back surgery, only worsening pain and less functional ability. She explained that after the surgery she had pain in her legs and constant shooting lower back pain radiating into her hips down to the knees. She testified to not taking medication, but instead took hot baths with Epsom salt and slept with a pillow between and under her legs during the period at issue. She further testified to having four to five migraine headaches a month that lasted all day during the period at issue. However, she testified to taking no medication for the migraine headaches.

As for activities of daily living, she testified that she stopped working in 2012 because she was laid off and did not look for other work due to having back pain. [Plaintiff] testified to being married and living in a house with her husband during the period at issue. She explained that her grandchildren have lived with them for the last four years, which the grandson is now age ten and the granddaughter is now age nine. She testified to having a driver's license during the period at issue and drove short distances. During the period at issue, she testified to cooking and cleaning the home. She testified to attending parent teacher meetings. She confirmed using a cellular telephone without difficulty. She added that she sent text messages to her daughter, mother, husband, neighbor, best friend, and sister. She further testified that during the period at issue she had a Facebook page and posted inspirational messages daily along with having an Instagram page. Moreover, during the period at issue, she testified to taking the grandchildren to play golf, do workouts, and play at the park, crafts, and paintings. She mentioned having a once a year gathering of the family, like a reunion. She further testified that she was a Sunday school teacher, pre-school to kindergarten, and hosted gatherings of her friends from church. Notably, during the period at issue she testified to being in fitness called "hard cardio," which she did for about five years up until the June 7, 2017 surgery. She testified that prior to the surgery, her husband needed to help her out of bed and she was not able to fully vacuum or mop, so her husband and grandchildren helped with the household chores.

(Tr. 26–27).

**B.      Relevant Medical Evidence**

The ALJ summarized Plaintiff's medical records and symptoms as to her physical impairments:

> With respect to degenerative disc disease of the lumbar spine and status-post lumbar laminectomy during the period at issue, it was not until February 2, 2015 that [Plaintiff] established care with Dr. Bonner at Muskingum Valley Health Centers, which I note did not involve any complaint of back pain. She reported it had been about six years since being seen by a family physician (Exhibit 3F/82). Further, there was another gap in treatment until 2017. An x-ray of the lumbar spine in January 2017 gave the impression of Grade 3 anterolisthesis of L5 on S1 and no acute fracture (Exhibits 3F/110; 4F/15). On April 11, 2017, she reported to Dr. Ogden at Genesis Healthcare System that when she was 16 years of age she fell on concrete and has had trouble with her back since then. She added that for the past five years she had been having intermittent daily right leg pain that was getting worse and was provoked by sitting or standing too long. She further reported intermittent paresthesias, but no weakness (Exhibit 4F/41). On examination by Dr. Ogden, she had a normal gait and five-out-of-five strength throughout (Exhibit 4F/43, 44). An x-ray of the lumbar spine at this time showed Grade 3 anterolisthesis of L5 on S1 measuring two centimeters without evidence of pathologic motion (Exhibits 2F/6; 4F/19). Additionally, a magnetic resonance imaging (MRI) of the lumbar spine on May 4, 2017 gave the impression of grade 3 anterohsthesis of L5 relative to S1 with no acute osseous abnormality of the lumbar spine. The MRI also gave the impression of severe bilateral neural foraminal narrowing at the L5-S1 level with no large focal disc herniation or significant central spinal canal narrowing in the lumbar spine and mild diffuse degenerative facet changes. There was a partially septated cystic structure in the right adnexa on coronal localizer images (Exhibit 4F/25). Dr. Ogden recommended L4-S1 laminectomy fixation fusion at L5-S1 (Exhibit 4F/45).

> Thus, on June 7, 2017 [Plaintiff] underwent a lumbar laminectomy (Exhibit 4F/49). A computed tomography (CT) scan of the lumbar spine after the surgery showed uncomplicated postoperative L4-S1 transpedicular screw and rod fixation and grossly similar L5-S1 grade 2/3 anterolisthesis (Exhibit 4F/40). On examination by Dr. Ogden on July 10, 2017, [Plaintiff] had a normal gait and five-out-of-five strength throughout (Exhibit 2F/35, 36). It was noted that she was doing quite well and was to return in six weeks (Exhibit 2F/37). An x-ray of the lumbar spine in August 2017 returned stable findings (Exhibits 2F/45; 4F/71). A CT scan of the lumbar spine in September 2017 showed status-post lumbar fusion and spondylolisthesis of the lumbar region (Exhibits 3F/109; 4F/81). At this time, she was being prescribed Flexeril 10 milligrams three times daily as needed for muscle spasms and Ibuprofen 800 milligrams every six hours as needed for pain. She also was provided an injection of Depo-Medrol for lumbar discomfort (Exhibit 3F/12,

3

13). Progress notes from Dr. Bonner on November 10, 2017, indicated she received an injection of Depo-Medrol for lumbar degenerative disc disease (Exhibit 3F/8).

[The ALJ] note[d] that [Plaintiff] had medical problems likely exacerbated by obesity. Body Mass Index (BMI) is a measure of an individual's obesity, indices 30 and above are considered to be in the obese range. From the alleged onset date through the date last insured, her BMI has ranged from 25.21 to 30.52 (Exhibits 3F/7, 82). Thus, her BMI has been just at the level of obesity, or, even below it. Multiple examinations did not note any deficits in gait, weight bearing, or balancing and there is no medical evidence of secondary effects or end organ damage related to obesity (Exhibits 2F/35, 48; 4F/43). . . .

(Tr. 27–28).

## C. The ALJ's Decision

The ALJ found that Plaintiff last met the insured status requirement on December 31, 2017 and did not engage in substantial gainful employment during the period from her alleged onset date of April 1, 2012, through her date last insured of December 31, 2017.  (Tr. 22).  The ALJ determined that, through the date last insured, Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, status-post lumbar laminectomy, and obesity.  (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment.  (Tr. 25).

The ALJ assessed Plaintiff's residual functional capacity ("RFC"):

After careful consideration of the entire record, [the ALJ] find[s] that, through the date last insured, the [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could have occasionally climbed ramps and stairs but never ladders, ropes or scaffolds. She could have occasionally balanced, stooped, knelt, crouched and crawled. She could have tolerated occasional exposure to and occasionally worked around hazards such as moving machinery or unprotected heights. Due to pain, she could have performed work that involved simple routine tasks requiring no more than short simple instructions and simple work related decision making with few work place changes.

(Tr. 25–26).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely

consistent with the medical evidence and other evidence in the record . . . ." (Tr. 27).

Relying on the VE's testimony, the ALJ concluded that, through the date last insured, Plaintiff was unable to perform her past relevant work as a restaurant management trainee. (Tr. 30). However, through the date last insured, considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, such as an electronics worker, hand packager inspector, and a garment sorter. (Tr. 31). The ALJ therefore concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from April 1, 2012, the alleged onset date, through December 31, 2017, the date last insured (20 CFR 404.1520(g))." (*Id.*).

## II.     STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence,

it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III.  DISCUSSION

In her Statement of Errors, Plaintiff contends that the ALJ erred by: (1) not classifying her migraine headaches as a "medically determinable" impairment at step two (Doc. 7 at 4–7); and (2) making an RFC determination that was not supported by substantial evidence (*id.* at 7–10).

### A.  Migraine Headaches at Step Two

Plaintiff alleges that the ALJ failed to classify her migraine headaches as a medically determinable impairment, and the failure led to an improper RFC determination.  (Doc. 7 at 4).

#### 1.  Step-Two Standard

An ALJ must make several determinations at step two.  First, an ALJ considers if a claimant's impairment constitutes a "medically determinable" impairment, i.e., an impairment that results from anatomical, physiological or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. §§ 404.1520; 404.1521.  A medically determinable impairment "must be established by objective medical evidence from an acceptable medical source."  20 C.F.R. § 404.1521.  Additionally, it must meet the durational requirement.  20 C.F.R. § 404.1509.  "If an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC."  *Rieder v. Comm'r of Soc. Sec.*, No. 2:20-CV-5858, 2021 WL 5881784, at *4 (S.D. Ohio Dec. 13, 2021), *report and recommendation adopted*, No. 2:20-CV-5858, 2021 WL 6197808 (S.D. Ohio Dec. 30, 2021) (quoting *Moore v. Comm'r of Soc. Sec.*, No. 2:20-CV-5114, 2021 WL 5149714, at *7 (S.D. Ohio Nov. 5, 2021)).  "Plaintiff has the burden of proving the existence of a medically determinable impairment."  *Id.* (quoting *Moore*, 2021 WL 5149714, at *7).

If an impairment is medically determinable, then an ALJ must determine whether it is severe. *Id.* A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The finding of at least one severe impairment at step two is merely a "threshold inquiry," the satisfaction of which prompts a full investigation into the limitations and restrictions imposed by all the individual's impairments. *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007). "And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'" *Id.* (quoting *Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *accord Smith v. Comm'r of Soc. Sec.*, No. 2:20-cv-1511, 2021 WL 972444, at *10 (S.D. Ohio Mar. 16, 2021) (finding no error despite ALJ's failure to designate plaintiff's neuropathy as a medically determinable or severe impairment where the ALJ discussed plaintiff's neuropathy and considered its impact on plaintiff's ability to work).

### 2. *ALJ's Step Two Analysis*

To begin, the Undersigned concludes that Plaintiff has not met her burden to establish that her migraine headaches are a medically determinable impairment. Plaintiff overstates her claim when she says that the record "consistently documents" her migraine headaches. (Doc. 7 at 5). The medical records she cites (Tr. 434, 450, 701, 705) are just patient information forms that include, for example: Time since her last visit, relevant lab results, allergies, a "problem list" and medical history. It is true that migraine headaches are listed under the "problem list" and medical history. Crucially though, the reasons for Plaintiff's visits are not migraine headaches; rather, the reasons include depression, anxiety, insomnia, back pain, chronic pain, and gynecologic care. (*See* Tr. 437, 440, 446, 456, 460, 463, 469, 477, 487, 491, 494, 498, 505, 701). In fact, from the Undersigned's review, no records show that Plaintiff sought treatment for migraine headaches.

And Plaintiff testified that she suffers from migraine headaches four to five days a month but does not take medication for this issue.  (Tr. 64–65).  Finally, the state consultative examiners do not list migraine headaches on the list of alleged impairments, nor did Plaintiff list migraine headaches on her disability report or appeal report forms.  (Tr. 238, 250).

Only "objective medical evidence from an acceptable medical source" can establish a medically determinable impairment.  20 C.F.R. § 404.1521.  Plaintiff's statement of symptoms, a diagnosis, or a medical opinion does not establish a medically determinable impairment.  *Id.*  Here, Plaintiff has not offered any objective medical evidence from an acceptable medical source establishing the existence of her migraine headaches.  Her hearing testimony and patient information forms merely listing migraine headaches as part of Plaintiff's medical history are not enough.  It is Plaintiff's burden to put forth the evidence necessary in order to demonstrate that her migraine headaches are a medically determinable impairment.  She has not met that burden.  Thus, the ALJ did not err.

Moreover, harmless error applies.  Plaintiff says that the failure to classify an impairment as medically determinable should be subject to a different standard of review than the failure to classify an error as severe.  (Doc. 7 at 6).  True, when "an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC." *Jones v. Comm'r of Soc. Sec.*, No. 3:15-cv-00428, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017).  But when the ALJ does consider the evidence supporting the impairment when crafting the RFC, as the ALJ did here, the harmless-error analysis is the same.  In other words, Plaintiff's argument "raises a distinction without a difference . . . ." *Fresquez v. Comm'r of Soc. Sec.*, No. 1:18cv114, 2019 WL 1440344 at *1 (S.D. Ohio Mar. 31, 2019) (declining to apply a different harmless-error analysis

when the ALJ did not list plaintiff's chronic fatigue syndrome as a medically determinable impairment at step two yet considered it nonetheless in the RFC).

Plaintiff's claim that the ALJ gave no consideration to her migraine headaches is not true. (Doc. 7 at 4). Because the ALJ determined Plaintiff had other severe impairments, she continued with an analysis of all the relevant evidence to determine Plaintiff's RFC. 20 C.F.R. § 404.1545. The ALJ specifically took Plaintiff's migraine headaches into account in the RFC analysis. The ALJ said: "[Plaintiff] further testified to having four to five migraine headaches a month that lasted all day during the period at issue. However, she testified to taking no medication for the migraine headaches." (Tr. 26). So, even if the ALJ misclassified Plaintiff's migraine headaches, the error is harmless because the ALJ considered the evidence supporting the alleged impairment when crafting the RFC. *Fresquez*, 2019 WL 1440344 at *1.

In sum, Plaintiff has not met her burden to establish that her migraine headaches are a medically determinable impairment. Moreover, the ALJ considered Plaintiff's testimony regarding her migraine headaches when crafting the RFC. Accordingly, there is no reversible error at step two.

**B. RFC Determination**

Plaintiff says that the ALJ erred in concluding that she could perform light work because the evidence of record does not support a finding that she can sustain the standing or walking requirement of light work due to her back issues and pain. So, because she cannot do the requirements of light work, Plaintiff says the RFC is not supported. (Doc. 7 at 9).

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009). *See also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final

9

responsibility in determining a claimant's residual functional capacity.  *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner").  And it is the ALJ who resolves conflicts in the medical evidence.  *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984).   Substantial evidence must support the Commissioner's RFC finding.  *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).

When determining the RFC, the ALJ is charged with evaluating several factors, including the medical evidence (not limited to medical opinion testimony) and the claimant's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)).  The RFC assessment must be based on all the relevant evidence in her case file.  20 C.F.R. § 416.945(a)(1). Since Plaintiff filed her application after May 23, 2017, it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed.  *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017).

Here, the ALJ determined that:

[Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could have occasionally climbed ramps and stairs but never ladders, ropes or scaffolds. She could have occasionally balanced, stooped, knelt, crouched and crawled. She could have tolerated occasional exposure to and occasionally worked around hazards such as moving machinery or unprotected heights. Due to pain, she could have performed work that involved simple routine tasks requiring no more than short simple instructions and simple work related decision making with few work place changes.

(Tr. 25).

 "Light work" is defined as:

. . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or

10

when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) and 416.967(b). Social Security Ruling 83-10, 1983 WL 31251, further advises that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time."

Plaintiff says the RFC is not supported because she cannot sustain the standing or walking requirement of light work. The ALJ, however, determined Plaintiff's RFC based on her evaluation of the record as a whole. Thus, the RFC and the determination that Plaintiff can perform light work is supported by substantial evidence.

First, the ALJ considered Plaintiff's treatment history. The ALJ discussed Plaintiff's degenerative disc disease of the lumbar spine prior to Plaintiff's surgery. She noted that an x-ray of Plaintiff's spine "gave the impression of Grade 3 anterolisthesis of L5 on S1 and no acute fracture." (Tr. 27 (citing Tr. 540, 581)). An MRI done several months later "gave the impression of grade 3 anterolisthesis of L5 relative to S1 with no acute osseous abnormality of the lumbar spine. The MRI also gave the impression of severe bilateral neural foraminal narrowing at the L5-S1 level with no large focal disc herniation or significant central spinal canal narrowing in the lumbar spine and mild diffuse degenerative facet changes. There was a partially septated cystic structure in the right adnexa on coronal localizer images." (Tr. 28 (citing Tr. 591)). This led Plaintiff's doctor to recommend a "L4-S1 laminectomy fixation fusion at L5-S1." (Tr. 28 (citing Tr. 611)). The ALJ also noted that during these pre-surgery visits, Plaintiff reported "intermittent daily right leg pain" that was provoked by sitting or standing for too long, and she suffered

"intermittent paresthesias."  (Tr. 27 (citing Tr. 607)).  Still, as the ALJ noted, Plaintiff had a normal gait and five-out-of-five strength during this time. (Tr. 27 (Tr. 609–10)).

The ALJ also documented Plaintiff's post-surgery medical records.  For instance, after Plaintiff's surgery, the CT scan of her lumbar spine "showed uncomplicated postoperative L4-S1 transpedicular screw and rod fixation and grossly similar L5-S1 grade 2/3 anterolisthesis."  (Tr. 28 (citing Tr. 606)).  An x-ray showed "stable findings."  (Tr. 28 (citing Tr. 425; 637)).  Plaintiff was noted to be doing well, with a normal gait and five-out-of-five strength.  (Tr. 28 (citing Tr. 415–17)).  A CT scan a few months post-operation showed "spondylolisthesis of the lumbar region." (Tr. 28 (citing Tr. 539, 647).  The ALJ considered that, at this time, Plaintiff's pain and discomfort was being treated with ibuprofen and injections of Depo-Medrol, as well as Flexeril for her muscle spasms.  (Tr. 28 (citing Tr. 441–42)).

Next, the ALJ considered the medical opinions of the state consultative examiners. (Tr. 28).  The consultative examiners opined that Plaintiff could perform light work including frequent kneeling, crouching, climbing ramps and stairs, occasional stooping or crawling, but never including climbing ladders, ropes, or scaffolds.  Plaintiff also should avoid unprotected heights.  (Tr. 28 (citing Tr. 79–86, 88–95)).  The ALJ found these opinions persuasive but found Plaintiff to be more limited based on subsequent documentation and her testimony.  (Tr. 29).  Thus, the ALJ was more favorable to Plaintiff in her RFC determination than the consultative medical examiners were in their evaluations.

Finally, the ALJ considered non-medical evidence such as Plaintiff's hearing testimony and her daily activities.  The ALJ considered Plaintiff's subjective complaints including her constant lower back pain and the restrictions it causes, such as her inability to lift, sit, walk, play with her grandkids, run, jog, or ride a bike.  (Tr. 26).  Plaintiff also said she had no improvement

from the surgery and that her pain and functioning have worsened, including pain in her legs and "constant shooting lower back pain radiating into her hips down to the knees." (*Id*.). The ALJ noted that Plaintiff does not take medications, instead opting for Epsom salt baths and certain sleeping positions. (*Id*.). As for daily activities, the ALJ mentioned that Plaintiff cooks and cleans her house, cares for her grandchildren, plays golf, works out, and hosts events such as a family reunion or church gathering. (Tr. 27).

Ultimately, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms, were inconsistent with her lack of medical treatment from the alleged onset date to 2015, the fitness classes she took up to her 2017 surgery, a lack of clinical findings for numbness, a post-operative treatment note showing improvement and intact hardware, physical examinations noting a normal gait and five-out-of-five strength, and her lack of medication to treat the alleged symptoms. (Tr. 29).

Plaintiff challenges this conclusion by arguing that the ALJ did not properly consider her "degenerative disk disease, bilateral sciatica, low back pain with radiation into the lower right extremity, or paresthesia." (Doc. 7 at 9 (citing Tr. 275, 284, 386, 388, 392, 407, 409, 441, 465)). She says that this evidence shows her difficulty standing or walking. (Doc. 7 at 9). But, as discussed above, the ALJ extensively considered Plaintiff's medical and non-medical records involving her back pain and specifically noted Plaintiff's normal gait and strength. Further, none of Plaintiff's cited records detail functional walking or standing limitations due to her alleged impairments. At best, Plaintiff cites a record that indicates her back pain was exacerbated by sitting or standing. (Tr. 388–89). Critically, she provides no record that indicates additional functional limitations in walking or standing are needed. And, upon independent review, the Undersigned found none.

Ultimately, the ALJ's analysis of Plaintiff's RFC allowed the Court to conduct a review of the decision.  The ALJ built a logical bridge between the evidence—including Plaintiff's medical records, medical opinions, hearing testimony, and daily activities—and her conclusion. Importantly, the RFC does reflect limitations due to Plaintiff's back issues and pain.  Specifically, limiting Plaintiff to light work with additional limitations.  The ALJ has supported this RFC with substantial evidence.

At base, Plaintiff wishes the ALJ had interpreted the evidence differently.  *Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7 (S.D. Ohio May 20, 2016), report and recommendation adopted, No. 2:15-CV-01831, 2016 WL 4486936 (S.D. Ohio Aug. 26, 2016), aff'd, 690 F. App'x 385 (6th Cir. 2017).  But the law prohibits the Court from reweighing the evidence and substituting its judgment for the ALJ's.  *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.")).  The ALJ properly considered Plaintiff's record as a whole, and substantial evidence supports the ALJ's ultimate conclusion. Plaintiff's alleged error is meritless.

IV.    **CONCLUSION**

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 7) and **AFFIRM** the Commissioner's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific

proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date:   June 16, 2022                                   /s/ Kimberly A. Jolson
                                                        KIMBERLY A. JOLSON
                                                        UNITED STATES MAGISTRATE JUDGE